UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD KNIGHT,<br><br>    Plaintiff,<br><br>v.<br><br>KEITH YORDY,<br><br>    Defendants. | Case No. 1:16-cv-00459-BLW<br>(lead case)<br><br>**MEMORANDUM DECISION AND ORDER** |
| RICHARD KNIGHT,<br><br>    Petitioner,<br><br>v.<br><br>WARDEN RAMIREZ,<br><br>    Respondent. | Case No. 1:19-cv-00041-BLW<br>(consolidated case) |

  Pending before the Court in Petitioner Richard Knight's habeas corpus consolidated case is Respondent's Motion to Dismiss, which is now fully briefed. (Dkts. 49, 50.) The Court has reviewed the entire matter in both cases and is ready to rule on the Motion to Dismiss. For clarity's sake, the Court will refer to the lead case as the "2016 case" and the member case as the "2019 case."

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL BACKGROUND

On March 20, 2019, acting with the consent of all parties, United States Magistrate Judge Ronald E. Bush entered final judgment in the 2016 case, which challenged Petitioner's 2012 state court convictions on two counts of lewd conduct with a minor under the age of sixteen and one count of sexual abuse of a minor under the age of sixteen. (Dkt. 29 and 30). Unbeknownst to Judge Bush and before entry of that judgment in the 2016 case, Petitioner filed a separate, second habeas action challenging the same 2012 convictions in the 2019 case.[1]

Judge Bush construed the second petition in the 2019 case as a motion to amend the petition in the 2016 case. *See Goodrum v. Busby*, 824 F.3d 1188, 1192 (9th Cir. 2016) (when a petitioner files a second petition while a first petition is already pending, the Court "must construe the new petition as a motion to amend" the previous petition—not "as an unauthorized second or successive petition"). Judge Bush vacated the judgment in the 2016 case and reopened the 2016 case for consideration of the petition filed in the 2019 case and any further amendments in the 2016 case. (Dkt. 31.) Both cases were then reassigned to this Court for a final determination.

---

[1] The Court agrees with Judge Bush's analysis that, although Petitioner identified two different state court case numbers in the petitions in these two habeas cases, both habeas cases challenge the same 2012 convictions, as Petitioner identified the same docket number for his direct and post-conviction appeals in both petitions, as well as the same date of sentencing on all three convictions. *Compare* Dkt. 3, p.1, in 1:16-cv-00459-REB, with Dkt. 3, p.1, in Case No. 1:19-cv-00041-REB; *see also State v. Knight*, No. 40614, 2014 WL 668503 (Idaho Ct. App. Feb. 19, 2014) (unpublished); *Knight v. State*, No. 43042, 2016 WL 2841098, at *1 (Idaho Ct. App. May 13, 2016) (unpublished). The Court has been unable to locate the state court case number identified in the new petition, Case No. 1:19-cv-00041-REB, in the Canyon County iCourt Database, https://icourt.idaho.gov/.

**MEMORANDUM DECISION AND ORDER - 2**

## OUTLINE OF PETITIONER' CLAIMS

Petitioner is proceeding on his Third Amended Petition in Case 2016 (Dkt. 46 in this case), and the original Petition in Case 2019 (Dkt. 3 in that case). The Court will first identify the claims presented.

**1.     Third Amended Petition in Case 2016**

   *A.     First Claim*

Petitioner asserts that he is actually innocent. The United States Supreme Court has determined that a claim of actual innocence is not cognizable on collateral review in a federal habeas corpus action. *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993) ("[O]ur habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."). Accordingly, this is not a cognizable federal habeas corpus claim, but may be used to excuse the procedural default of other claims.

Petitioner also asserts in the First Claim that the prosecutor misstated facts, committed prosecutorial misconduct based on a deficient investigation, withheld exculpatory evidence, and participated in a trial that resulted in Petitioner's conviction upon insufficient evidence.

   *B.     Second Claim*

Petitioner's second claim is "deficient and ineffective assistance of counsel." He asserts that trial counsel failed to investigate a medical condition defense, failed to retain

**MEMORANDUM DECISION AND ORDER - 3**

an expert regarding Petitioner's mental psychosis, and restricted his right to present evidence,

Petitioner also asserts that counsel had an ulterior purpose for his poor performance (to end his employment with the public defender's office at the time of trial), and thus counsel abandoned him. Petitioner was appointed another attorney from the public defender's office after his counsel left his employment there, but the new attorney entered the case only the day before the sentencing hearing.

### C. Third Claim

Petitioner asserts that a structural error occurred when the prosecutor and defense counsel "did not give a due process notice [that] the criminal action would be prosecuted under Idaho Sessions Laws Chapter 368 (1982), the whole legislative act." (*Id.*, p. 12.) As a result, Plaintiff asserts that the jury did not have notice, and that "he was denied the opportunity for a fair and just trial, denied the reasonable ability to decide whether to plead guilty or go to trial, and denied the opportunity to a mens rea hearing," as well as denied the right to an "I.S.L. – ch 368 (title 19) sentencing," the opportunity "to an I.S.L. chapter 368, (title 66) conditions of confinement; and access to release." (*Id.*, pp. 12-13.)

### D. Fourth Claim

Petitioner asserts that the trial court committed clear and plain error because his conviction was based on "less than proof beyond a reasonable doubt" of every element of the charged crime. He asserts that "no instruction was given on Idaho Code § 28-307(c), mens rea and specific intent, and a mens rea hearing was not offered." As a result, he alleges, "the court failed to recognize the crime being the result of a mental psychosis

**MEMORANDUM DECISION AND ORDER - 4**

required assignment of a psychiatrist to the defense team." (*Id.*, p. 13.) "Mitigating mental status [was] not regarded by the court or jury, see the Whole Legislative Act, Idaho Session Laws Chapter 368 (1982). The jury instructions diluted the reasonable doubt standard of proof. Jury instructions on every essential element of the crime were not given. Jury instructions were fundamentally defective in defining elements of the crime. The jury instructions improperly shifted the burden of proof. The jury instructions lightened the prosecution's burden of proof. Jury voir dire was interfered with or limited in an unreasonable manner. (*Id.*, pp. 13-16.)

**2.      Petition in Case 2019**

   A.     *First Claim*

The first claim in Case 2019 is the same as the first claim in Case 2016.

   B.     *Second Claim*

The second claim in Case 2019 is the same as the second claim in Case 2016.

   C.     *Third Claim*

The third claim has multiple subclaims: that Petitioner's confrontation rights were denied; that the conviction is based on evidence known to be false; that the elements of the crime charged were not established, including mens rea; that cross-examination was denied; that there was a collusive effect of all violations; that the prosecutor unfairly impeached his credibility; that he was denied the right to present evidence and witnesses; that he was denied jury instructions on his theory of defense; that he suffered discrimination in law enforcement; that the evidence was insufficient to establish his guilt beyond a reasonable doubt; that the prosecution did not disclose impeachment evidence

**MEMORANDUM DECISION AND ORDER - 5**

material to Petitioner; that the prosecution knowingly used perjured testimony; that an element of the offense was misconstrued, and so there was no proffer of evidence to support specific intent; that Petitioner was denied peremptory challenges in jury selection; that the prosecutor used perjured testimony and denied him a fair trial; that Petitioner's speedy trial rights were denied; that state law was violated to obtain the conviction; that the statute under which he was convicted was vague; that he was subjected to vindictive prosecution; that he suffered an unlawful search of his home; that the arrest warrant as obtained by "misdetermined" probable cause; that he was subjected to a police interrogation without counsel; and that the police failed to give him self-incrimination warnings.

### D.    Fourth Claim

The fourth claim in Case 2019 is the same as the fourth claim in Case 2016.

### E.    Fifth Claim

The fifth claim is based on "common error (the plain error rule)." Petitioner asserts that the record does not contain the proper and reasonable protections of "Idaho Session Laws, chapter 368, §§19.2522/2523"; that his sentence is excessive; that his sentence is disproportionate; that he was denied release on parole; and that "Ida Sess Laws, ch. 368, merges as a sentence with ch 336 (2009) implementation [sic]."

## PROCEDURAL DEFAULT

Petitioner first asserts that his Petitions should be construed under 28 U.S.C. § 2241 because of "the unique mental health nature of the criminal conduct" and his status as a "patient." (Dkt. 46, p. 2.) There is no factual or legal basis for this assertion.

Title 28 U.S.C. § 2241 is a "general grant of habeas corpus authority" that applies to persons held in state custody for reasons *other than* a state court criminal judgment, including circumstances of "pre-conviction custody, custody awaiting extradition, or other forms of custody that are possible without a conviction." *White v. Lambert*, 370 F.3d 1002, 1005 (9th Cir. 2004) (internal citation omitted). Once a person has been convicted in state court, § 2254 is the proper provision to obtain habeas corpus relief.

In any event, petitions for habeas corpus submitted under both §§ 2241 and 2254 require exhaustion of state court remedies before presentation of federal claims to the federal district court. *See Carden v. State of Montana*, 626 F.2d 82, 83 (9th Cir. 1980) (a pre-requisite to bringing a federal habeas corpus petition under 28 U.S.C. § 2241 is exhausting one's federal claims in state court). The exhaustion doctrine requires that a petitioner give the state courts, through the designated appellate process, "a full and fair opportunity to resolve federal constitutional claims" before bringing those claims to federal court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (explaining exhaustion in the context of § 2254 petitions). This means that a person in state custody must follow his state court challenge of federal constitutional issues through the Idaho Supreme Court, and then, if he is not granted relief after exhausting all state court remedies through the Idaho Supreme Court, he may then proceed to federal court.

**MEMORANDUM DECISION AND ORDER - 7**

Respondent's procedural default argument is simple—Petitioner failed to file a petition for review asking the Idaho Supreme Court to review any of his federal claims. (Dkt. 49-1.) The Court agrees that the record supports Respondent's contention with respect to all federal claims. The record shows that Petitioner brought a state law excessive sentence claim on direct appeal (not brought as a federal claim), which the Idaho Court of Appeals heard and rejected. (*See* State's Lodging B-1.) Thereafter, Petitioner filed a petition for review with the Idaho Supreme Court on the state law claim, which was denied. (See State's Exhibit B-7.)

Petitioner filed a post-conviction appeal, which was heard by the Idaho Court of Appeals, but he did not file a petition for review with the Idaho Supreme Court after denial of the post-conviction petition was affirmed on appeal. (*See* State's Lodgings D-10 to D-11; Dkt. 19.) Therefore, all of the claims in both Petitions are procedurally defaulted on federal habeas corpus review, because it is now too late to bring them properly in state court.

## CAUSE AND PREJUDICE EXCEPTION

If a claim has not been properly exhausted in the state court system, the claim is considered "procedurally defaulted." *Coleman,* 501 U.S. at 731. A procedurally defaulted claim will not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Id.*

**MEMORANDUM DECISION AND ORDER - 8**

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Petitioner raises of variety of "causes" for the procedural default of his claims. Petitioner asserts that the State created barriers that frustrated, hindered, and chilled his rights. He asserts he was at a disadvantage because the prison does not provide a law library or legal assistance for mentally challenged prisoners. (*Id.*, p. 3.)

Petitioner also asserts that "there are many deliberate (intentional) forms of retaliation or coercion that State Prosecutors can engage in, to prejudice an individual's (prisoner's) U.S. First Amendment rights; to gain an undue advantage." (*Id.*, pp. 4-5.) Petitioner also asserts that he is a qualified individual with a disability under the ADA, that he has been denied services because of his disability, and has suffered prejudice from denial of services.

In all of these excuses, Petitioner ties none directly to his failure to file a petition for review in the Idaho Supreme Court. He has not shown that the prison legal resource center did not have the Idaho Appellate Rules available for his use at the time the petition for review was due in his case. Nor has he shown that the "State Prisoner Self-Help Packet [for] Federal Habeas Corpus Petition" (created by federal court staff) was not

**MEMORANDUM DECISION AND ORDER - 9**

available to him. The Packet instructions from 2011 clearly outline the requirement of presentation of federal claims to the Idaho Supreme Court. (*See* State Prisoner Self-Help Packet - Federal Habeas Corpus Petition instructions, attached to this Order as an exhibit.)

Neither has Petitioner shown that he is mentally disabled to the degree that he could not have gone to the prison legal resource center and reviewed the Idaho Appellate Rules or the federal habeas corpus packet rules. Indeed, his prolific filings in multiple cases show that he is fully capable of researching claims and issues, filing court documents by himself and with the help of other prisoners, and protecting his interests. The Idaho Court of Appeals issued its opinion in his post-conviction case on May 13, 2016. During the same approximate time frame, Petitioner filed three civil rights cases in federal court: Case No. 1:16-cv-00096-REB, *Knight v. State of Idaho et al.*, filed 03/07/16; Case No. 1:16-cv-00358-REB, *Knight v. Idaho Board of Corrections et al.*, filed 08/08/16; and Case No. 1:17-cv-00147-REB, *Knight v. State of Idaho*, filed 03/23/17.

All of Petitioner's other excuses are too vague to support a "cause" argument. Nor does Petitioner show that any of the excuses actually "caused" the default of his claims, that is, the failure to file the petition for review. Hence, the Court rejects Petitioner's assertion that adequate "cause" exists to excuse the default of his claims.

## MISCARRIAGE OF JUSTICE EXCEPTION

If a petitioner cannot show cause and prejudice for a procedurally defaulted claim, he can still raise the claim if he demonstrates that the court's failure to consider it will

**MEMORANDUM DECISION AND ORDER - 10**

result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). A miscarriage of justice means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. at 496.

To show a miscarriage of justice, a petitioner must make a colorable showing of factual innocence, *Herrera v. Collins*, 506 U.S. 390, 404 (1993), meaning that the new evidence presented shows "it is more likely than not that no reasonable juror would have found Petitioner guilty." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Types of evidence that "may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996). The evidence supporting the actual innocence claim must be "newly presented" evidence of actual innocence, meaning that "it was not introduced to the jury at trial"; it need not be "newly discovered," meaning that it could have been available to the defendant during his trial, though it was not presented to the jury. *Griffin v. Johnson*, 350 F.3d 956, 962–63 (9th Cir. 2013).

Judge Bush thoroughly analyzed and rejected this assertion. (*See* Dkt. 29, pp. 11-12.) After a full de novo review, this Court agrees with that analysis. Plaintiff has made no showing of factual innocence, and therefore, he does not qualify to proceed to the merits of his claims under this exception to the procedural default rule.

**MEMORANDUM DECISION AND ORDER - 11**

## CLAIM FIVE IN 2019 CASE: SENTENCING ERRORS

Petitioner asserts here that his sentence is excessive and disproportionate to the crimes. He relies mainly on state law theories, which cannot provide a basis for federal habeas corpus relief. He did not properly exhaust any sentencing claim based on a federal constitutional theory. Regardless, the Court will review the sentence for constitutionality. In his direct appeal, Petitioner admitted that his sentence was within the maximum term set forth in the applicable statute. (*See* State's Lodging B-1, p. 3.)

In *Hutto v. Davis*, 454 U.S. 370, 372 (1982), the Supreme Court stated that it had "never found a sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment."[2] That is, because the crime allowed for a 30-year sentence and the state court provide an adequate justification for the sentence, Petitioner's sentence of 28 years does not violate the Eighth Amendment's Cruel and Unusual Punishment Clause (or the Fourteenth Amendment's Due Process Clause).

As to disproportionality, harsher sentences for lesser crimes have been upheld by the United States Supreme Court. In *Rummel v. Estelle*, 445 U.S. 263 (1980), the Supreme Court held that a sentence of life imprisonment with an opportunity for parole after twelve years did not constitute cruel and unusual punishment in a situation where a defendant with two prior felony convictions was convicted of obtaining $120.75 by false

---

[2] Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Eighth Amendment is the more particular provision in this instance.

**MEMORANDUM DECISION AND ORDER - 12**

pretenses. In *Harmelin v. Michigan*, 501 U.S. 957 (1991), the Supreme Court affirmed a Michigan court judgment sentencing the defendant to a statutory mandatory life sentence without the possibility of parole for possessing more than 650 grams of cocaine, rejecting a disproportionate sentence argument. In *Solem v. Helm*, 463 U.S. 277 (1983), the United States Supreme Court reviewed the "disproportionality" of a sentence to the crime, but that was a case where the convicted felon had a term of life without parole.

Here, Petitioner was charged with performing oral sex and touching the breasts of his 14-year-old granddaughter, and putting his hand down the pants of his granddaughter's friend, who was also a minor. Petitioner was sentenced to a unified sentence of 20 years, with 10 years indeterminate for the lewd conduct charges, and 15 years, with 5 years indeterminate, for the sexual abuse charge. There is no federal precedent demonstrating that the sentences Petitioner received violate the Constitution. Therefore, Petitioner's sentencing claims—to the extent they can be construed as federal and not state claims—do not warrant habeas corpus relief.

### 3.   Conclusion

For the reasons set forth above, all of the claims in Petitioner's Third Amended Petition in Case 2016 and original Petition in Case 2019 are procedurally defaulted. Alternatively, the sentencing claim is denied on the merits. Adequate cause and prejudice or a miscarriage of justice to excuse procedural default has not been shown. Therefore, Petitioner's entire action will be dismissed with prejudice.

### ORDER

1. Respondent's Motion to Dismiss (Dkt. 49) is GRANTED.

**MEMORANDUM DECISION AND ORDER - 13**

2. This entire consolidated action is DISMISSED with prejudice.

3. A certificate of appealability will not issue, because the Court's decision is not reasonably debatable. See 28 U.S.C. § 2253(c).

4. If Petitioner files a timely notice of appeal, the Clerk of Court must forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from that Court by filing a request there.

DATED: August 3, 2020

B. Lynn Winmill  
U.S. District Court Judge